McCLENDON, J.
The fifteen-year-old juvenile, D.M., was alleged to be delinquent according to petition number 111,578, filed by the State on July 3, 2017, pursuant to the Louisiana Children's Code.[1] The petition was based upon the alleged commission of simple burglary, a violation of Louisiana Revised Statutes 14:62. The juvenile entered a denial to the allegation. Following an adjudication hearing, the juvenile was adjudicated delinquent. At the disposition hearing, the juvenile judge committed the juvenile to the custody of the Office of Juvenile Justice ("OJJ") until his twenty-first birthday. On appeal, the juvenile argues that the disposition imposed is excessive. For the following reasons, we affirm the juvenile's adjudication of delinquency and disposition.
FACTS
At the adjudication hearing, witness Jason Hunt testified that on May 25, 2017, he received a notification between 1:00 a.m.
*1234 and 5:00 a.m. that motion was detected on his driveway in Baton Rouge. When he viewed a surveillance recording of his driveway, he observed three men entering his truck. He testified that nothing was taken from his vehicle. He turned the surveillance video over to the East Baton Rouge Sheriff's Department. The video depicts the juvenile as one of the three men who entered Hunt's vehicle and the juvenile identified himself in the video.
The juvenile was also developed as a suspect in a rash of burglaries that took place in various subdivisions in the Shenandoah area of Baton Rouge. On June 30, 2017, the juvenile was placed under arrest at the residence where he lived with his parents, advised of his Miranda[2] rights, and transported for questioning. Detectives searched the juvenile's house and located multiple cellular telephones, two tablet devices, rubber gloves, a .380 magazine, and a pair of tennis shoes that matched those worn by the juvenile in the surveillance video. Thereafter, a detective drove the juvenile around various neighborhoods, and the juvenile pointed out the unlocked vehicles that he and two other juveniles burglarized. The juvenile stated that he and the other two juveniles "hit" at least fifteen vehicles in one of the neighborhoods and sold stolen items to classmates and through "Letgo." He pointed out seven specific addresses where unlocked vehicles were parked. One of those addresses was 15414 Ferrell Avenue, which the juvenile noted they "hit" in early to mid-June. The juvenile specifically noted that a "Glock" was taken from the 15414 Ferrell Avenue address but denied that he was the person who took the firearm.
After testimony connected to the instant petition was introduced, the State called witnesses in connection with petition number 111,588, counts two and eighteen (simple burglary) and count nineteen (theft of a firearm). John Demopulos, who lived at 15414 Ferrell Avenue in Baton Rouge, testified that his two vehicles were burglarized at his home between June 13, 2017, at 11:30 p.m. and June 14, 2017, at 7:30 a.m. On the morning of June 14, 2017, Demopulos found that his Bible, 9 millimeter Glock pistol, checkbook, and address book were taken from one vehicle, and a prescription medicine bottle had been removed from the second vehicle.
DISCUSSION
In his sole assignment of error, the juvenile argues that the disposition imposed by the juvenile court is excessive. Specifically, he complains that the juvenile court failed to articulate specific reasons for the disposition and imposed a disposition in excess of that necessary for rehabilitation.
Louisiana Children's Code article 901B provides that the court shall impose on the child the least restrictive disposition authorized by Louisiana Children's Code articles 897 through 900, which the court finds consistent with the circumstances of the case, the needs of the child, and the best interest of society. Commitment of the child to the custody of the Department of Public Safety and Corrections may be appropriate under any of the following circumstances: (1) there is an undue risk that during a period of a suspended commitment or probation the child will commit another crime; (2) the child is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment; (3) a lesser disposition will deprecate the seriousness of the child's delinquent act; and (4) the delinquent act involved the illegal carrying, use, or possession of a firearm. LSA-Ch.C. art. 901C. In imposing a disposition, the juvenile court is required to indicate in the *1235 record consideration of the statutory disposition guidelines. LSA-Ch.C. art. 903A; see State in Interest of R.L.K., 95-1277 (La.App. 1 Cir. 12/19/95), 666 So.2d 427, 432, writ denied, 95-3120 (La. 1/26/96), 666 So.2d 1084.
The juvenile court ordered a predisposition report. The report notes that on August 16, 2017, the juvenile participated in a predisposition interview wherein he admitted committing the burglaries and explained that he did so because he needed money to reimburse his mother after he stole sixty dollars from her. According to the juvenile, his mother "kicked him out" of the house for stealing the money and told him that he could not return until he reimbursed her. He stated that he "hit a lick" because he did not want to stay outside. He further stated that he wanted money to purchase drugs. The juvenile told his probation officer, who was conducting the interview, that he used Ecstasy pills and marijuana and often takes Ecstasy before he "hits a lick."
The predisposition report listed the juvenile's prior adjudications and periods of detainment. On December 2, 2015, the juvenile was detained under petition number 108,920, based on the alleged commission of illegal carrying of weapons, illegal possession of a handgun by a juvenile, theft of a firearm, and possession of marijuana. He was released on bond on December 4, 2015. On March 31, 2016, the juvenile was detained under petition number 109,561, based on the alleged commission of possession of marijuana. He was released on April 11, 2016, and that petition was dismissed. On September 13, 2016, the juvenile was committed to OJJ custody for a period of six months in connection with petition number 108,920. While in OJJ custody, the juvenile received three referrals to juvenile court. On February 7, 2017, the juvenile was released from the OJJ and placed on parole supervision until August 30, 2017. According to the juvenile, he was placed into three different facilities due to behavioral issues. The juvenile's father reported that the juvenile was released from parole supervision in March 2017. Between May 24, 2017, and June 14, 2017, the juvenile committed multiple vehicle burglaries.
The report notes that the juvenile's June 29, 2017 and August 16, 2017 drug screens yielded positive results for marijuana. The juvenile admitted using Ecstasy and marijuana. The juvenile's father disclosed that the juvenile also used Xanax, codeinecough syrup, and drank vodka. The juvenile's father further indicated that he believed the juvenile may have been involved in a gang.
The juvenile's probation officer concluded that the juvenile appeared to have a "propensity for further criminal activity, substance abuse issues, mental health issues, and possible gang affiliations." The officer noted that reasonable efforts had been made to prevent removal of the juvenile from his home including supervised probation and parole, house arrest with GPS monitoring, and the Evening Reporting Center. The officer recommended that the juvenile be committed to the OJJ for a period not to exceed his twenty-first birthday.
At the juvenile's disposition hearing, his mother testified that they had some "small hiccups" since the juvenile returned home, but that he was in school. She requested that the juvenile be given a chance at probation. His mother confirmed that the juvenile had taken money from her in the past and that she had "kicked him out" of their house multiple times.
Prior to entering the disposition, the juvenile court stated that the juvenile had ten separate arrests and that this was not his "first rodeo." The juvenile court further explained that it was concerned about public safety, noting that the juvenile stole *1236 property, including a gun, after being released from OJJ custody. The court opined that there was no appropriate disposition other than commitment to OJJ custody until the juvenile's twenty-first birthday, but that the juvenile was eligible for parole. The juvenile court specifically stated that it was "up to [the juvenile]" as to how long he would remain in custody.
After reviewing the record in light of the excessiveness criteria, we find no abuse of discretion in the juvenile court's imposition of the disposition of OJJ custody until the juvenile's twenty-first birthday. The record reflects that the juvenile has a history of delinquent behavior as well as substance abuse and is in need of treatment that can best be provided in custodial care. Based on the juvenile's history, there is an undue risk that he will commit another crime during a period of suspended commitment or probation. See LSA-Ch.C. art. 901C(1). Accordingly, this assignment of error is without merit.
CONCLUSION
For the foregoing reasons, we affirm the juvenile court's adjudication of delinquency and disposition.
ADJUDICATION AND DISPOSITION AFFIRMED.

The juvenile was also alleged to be delinquent according to petition number 111,588, filed by the State on July 7, 2017, and based upon the alleged commission of eighteen counts of simple burglary and one count of theft of a firearm, first offense. The juvenile was adjudicated delinquent on two of those simple burglary charges (counts two and eighteen) and the theft of a firearm charge (count nineteen). The juvenile court committed the juvenile to the custody of the Office of Juvenile Justice until his twenty-first birthday, to run concurrently with the disposition imposed under petition 111,578. The juvenile has also filed an appeal challenging that adjudication and disposition. See State in the Interest of D.M., 2017-1418 (La.App. 1st Cir. 2/21/18), --- So.3d ----.

Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).